UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


MARK ANTHONY KING,

                    Petitioner,

v.                                            Case No. 5:06-cv-97-Oc-10GRJ


SECRETARY, DEPTARTMENT
OF CORRECTIONS,

                    Respondent.
_____


## ORDER DENYING PETITION

Petitioner initiated this case by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from Petitioner's 2004 jury-trial convictions for six counts of robbery. The offenses of conviction occurred in Marion, Alachua, Seminole, Manatee, and Pasco Counties, and Petitioner was prosecuted by the Office of Statewide Prosecution.[1] Petitioner seeks relief on eight grounds. Id. The Respondent has filed a Response (Doc. 7) contending that all but four of Petitioner's claims are unexhausted and/or procedurally defaulted, and that Petitioner is not entitled to relief on the merits of his exhausted claims. Upon due consideration of the Petition, the Response, the state-

---

[1]Petitioner was also charged with bank robberies in Citrus and Osceola Counties, but those offenses were not part of the statewide prosecution underlying the instant petition. See App. tab B.

court record contained in Respondent's Appendix, and Petitioner's reply (Doc. 11), the Court concludes that the Petition must be denied.[2]

## Procedural Background

The portions of the state record that are relevant to the disposition of Petitioner's claims may be summarized as follows. Petitioner was charged with committing six counts of strong-arm robbery (using force, violence, assault, or putting the victim in fear) from October 2000 through February 2001, in five different counties. App. tab A at 21-24. Petitioner was initially represented by the public defender. Petitioner became dissatisfied with his appointed counsel, and filed a motion to dismiss her for alleged conflict of interest and ineffectiveness. App. tab B. The trial court conducted a hearing on the motion. Id. Among Petitioner's concerns were the length of time he had spent in Pasco County jail following his admission of guilt and his cooperation with law enforcement authorities, and his counsel's alleged confusion as to which offenses were part of the statewide prosecution. Id. Petitioner stated to the court "[O]ut of all honesty, sir, I understand the work loads that they carry. I just feel at this point in time, I can handle this better on my own." Id. at 12. Petitioner expressed dissatisfaction that he had been offered a plea agreement of eight years' incarceration which he thought was for all eight pending robbery charges, but counsel later informed him that she was mistaken and that the plea

---

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

offer was only for the six charges that formed the statewide prosecution.  See id. at 13.

The court advised Petitioner that it found no basis for discharging Petitioner's counsel, and Petitioner affirmed his understanding that the court was not required to appoint a different attorney for him if counsel was discharged.  Id. at 14. Petitioner affirmed that he understood he would be representing himself, that he was requesting to represent himself freely and voluntarily, and that he had not been threatened to do so.  Id. at 14-15.  The court then conducted an extensive colloquy with Petitioner, during which the court explained in detail Petitioner's right to have a lawyer and the advantages of having a lawyer represent him.  Id. at 15-17.  The court cautioned Petitioner that "it is almost always unwise to represent yourself in court," and explained the disadvantages of self-representation.  Id. at 17-19. Petitioner affirmed that he understood the charges against him, and that he knew that each charge carried a maximum penalty of up to 15 years in prison.  Id. at 19-20.

The court then asked Petitioner a series of questions to elicit whether Petitioner was competent to make a knowing and intelligent waiver of counsel.  Id. at 22.  Petitioner affirmed that he was 45 years old, could read, write, and understand the English language, had no hearing difficulties, and was a high school graduate.  Id. at 22-23.  Petitioner affirmed that he was not under the influence of drugs or alcohol, took no medications, and had spent three weeks in a VA mental

facility in August-September 2000, but was not diagnosed with anything.  Id. at 23.

Petitioner denied that he had any physical problem that would hinder his self-representation.  Id. at 24.  Petitioner then reaffirmed his desire to represent himself.

Id. at 25.  The court denied Petitioner's motion as to counsel's alleged ineffectiveness, and granted Petitioner's motion to discharge his counsel and represent himself.  The court appointed the public defender to act as stand-by counsel during trial.  Id. at 27.  The court stated that "I do find that Mr. King's choice in this regard is freely, knowingly, intelligently and voluntarily made; that he has not been coerced in any way to make that decision; and that he is competent to make that decision."  Id. at 28.

The parties then discussed the prosecution's plea offer to Petitioner.  The prosecutor advised the court that Petitioner had been extended an offer of eight years' imprisonment for the six charges underlying the statewide prosecution.  Id. at 32.  The court advised Petitioner that he should review and at least consider the offer.  Id. at 32-33.

Prior to trial, the court conducted a hearing on Petitioner's motion to suppress his statements to law enforcement personnel.  Id. at 35.  The court again inquired whether Petitioner wished to represent himself; Petitioner responded that he did and the court stated "[v]ery well.  I continue to find you to be alert, intelligent and competent in this proceeding and that you are able to continue to represent yourself."  Id. at 37.  The court then addressed another motion Petitioner had filed

entitled "Motion to Discuss and Review the Competency of the Defendant (Mental Illness)." Id. at 38. The court affirmed that Petitioner understood the charges against him and the possible punishment for each count of robbery, and that Petitioner understood the prosecutor's role as Petitioner's adversary. Id. at 39-41. The court stated that "[i]t's obvious to me that you understand the nature of the legal process, that is the nature of the court proceeding and the trial." Id. at 41. The court inquired whether Petitioner had been treated for any mental illness, and Petitioner stated that he was treated in a VA medical program for gambling addiction. Id. Petitioner left the program early, after 25 days of treatment. Id. Petitioner stated that was initially admitted to the VA hospital following a suicide attempt and was treated with antidepressants, and then was transferred to the inpatient gambling program and taken off of medication. Id. at 42. The court then made the following findings: "I do find that you have always at all times manifested appropriate courtroom behavior. I do find that you're well spoken and able to represent yourself. I've already made that determination. And I believe if you chose to do so, you would be able to testify relevantly in regards to the issues in this case. So I don't see that competency is an issue. I believe you're competent to proceed." Id. at 42-43.

Turning to the motion to suppress, the state presented the testimony of the law enforcement officers to whom Petitioner confessed at Pinellas County Jail after he turned himself in. Id. at 48-100. Each officer who testified stated that Petitioner freely and voluntarily executed a written waiver of his Miranda rights, and freely and

voluntarily described the bank robberies.  They testified that Petitioner appeared lucid and was cooperative and cordial.  Id.  After placing Petitioner under oath, the court reminded him that "[t]he issue, sir, is whether these statements that you're seeking to be suppressed were freely and voluntarily given after a waiver of your Constitutional rights against self incrimination."  Id. at 103.  Petitioner, who was confined in the jail's infirmary under suicide watch at the time of his confessions, testified that his confessions were affected by "the pressures and circumstances swirling around," including "[t]he suicidal nature, the intoxication, being put into a medical wing on a suicide doctor's care, not given the services of the attorney because I was in the jurisdiction that had no charges pending.  So, it was and again, not knowing the process and being unaware of it all."  Id. at 103-04. The court subsequently entered a written order denying Petitioner's motion to suppress.  App. tab A at 70.

At the commencement of trial, the court again inquired whether Petitioner intended to represent himself and Petitioner replied affirmatively.  Id., at  4.  The court stated "[y]ou again appear to me to be alert, intelligent and competent to make the decision to represent yourself.  I note for the record previously I had some time ago conducted a full Faretta inquiry and made the determination Mr. King was knowingly, intelligently making the decision to represent himself each time he's appeared in court.  I have reminded him he has the right to have counsel and each time he has indicated he wants to represent himself."  Id.

The evidence adduced at trial by the State included Petitioner's confessions, the testimony of law enforcement officers who investigated the robberies and to whom the confessions were given, and the testimony of witnesses and victims who identified Petitioner as the perpetrator of the robberies. App., tab A. One bank teller in particular, Tracy Gonzalez, testified about the fear she felt during the robbery. Id. at 339-50. On cross-examination, Petitioner showed Ms. Gonzalez the written statement she had given to police and inquired whether she had been told to include a statement that she felt fearful. Id. at 351. When Ms. Gonzalez stated that the police "may have" instructed her to do that, Petitioner moved for a mistrial on the ground of "witness tampering." Id. at 351. The court denied the motion. Subsequently, on redirect, Ms. Gonzalez reaffirmed that the statement she gave to police was true and accurate. Id.

At the close of the State's case-in-chief, the court again reminded Petitioner of his right to the assistance of counsel, which Petitioner again declined. The court found that Petitioner was "alert, intelligent, and competent to make that decision," and noted that standby counsel had been present throughout the case. Id. at 466-67. The court denied Petitioner's motion for judgment of acquittal, finding that the State had established at least a prima facie case as to each count. Id. at 467-68.

In support of his defense that he was not guilty by reason of insanity, Petitioner presented the testimony of an expert forensic psychologist, Dr. Richard Carpenter. App. tab A at 471. Dr. Carpenter examined Petitioner approximately two

years prior to trial, and diagnosed Petitioner as suffering from major depression, generalized anxiety disorder, substance abuse, and mixed personality disorder. Id. at 475-76. Dr. Carpenter opined that Petitioner met the criteria for admission to a dual-diagnosis program, and that he did suffer from a mental illness and was amenable to treatment. Id. at 487. On cross-examination, Dr. Carpenter stated that based on his examination he had determined that Petitioner met all of the criteria for competency to proceed to trial. Id. at 495. Dr. Carpenter further stated that he found no evidence that suggested that Petitioner met the Florida standard for finding that he was not guilty of the charged offenses by reason of insanity. Id. at 498-99, 501. On redirect, Petitioner read aloud from a narrative he had written describing the bank robberies, and then inquired as to whether the narrative would change Dr. Carpenter's opinion. Dr. Carpenter replied that Petitioner's narrative "[does not] sound the least bit insane to me." Id. at 503-04.

Petitioner testified on his own behalf. In sum, Petitioner conceded that he had robbed the banks, but asserted that his crimes, which did not involve actual use of a weapon or use of physical force, were not violent in nature and thus did not amount to strong-arm robberies. Petitioner testified that he was not in his "right mind" at the time of the robberies. Id. at 525-39.

The court's instructions to the jury included an instruction on the lesser-included offense of petit theft and an instruction on Petitioner' insanity defense. Id. at 590-91. The jury found Petitioner guilty of strong-arm robbery on each of the six

counts. Id. at 602. Petitioner was sentenced to a total of 20 years' incarceration.

The court appointed the public defender to represent Petitioner on appeal. Counsel filed a brief and a motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967). App. tab C. Counsel identified as arguable issues for appeal: (1) Whether the trial court erred in determining that Petitioner was competent to represent himself; (2) Whether the trial court erred in denying Petitioner's motion for judgment of acquittal; (3) Whether the trial court erred in denying Petitioner's motion to suppress his confession; and (4) Whether the trial court erred in denying Petitioner's motion for a mistrial. Id. The record does not reflect that Petitioner filed any response to the motion, and the court of appeals did not direct the State to respond. The court of appeals summarily affirmed Petitioner's conviction. Id. tab F.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting six claims. App. tab H. Petitioner alleged that (1) he had discovered that at the time he sought to represent himself he was suffering from ketoacidosis, a complication of diabetes, that rendered him unable to make a competent decision; (2) his appointed counsel rendered ineffective assistance by misadvising him as to the plea offer; (3) his counsel failed to investigate his defense; (4) the verdict form did not provide for the jury to find him not guilty by reason of insanity; (5) the trial court did not properly address unspecified constitutional issues raised in pretrial motions; and (6) Petitioner's legal inexperience resulted in the ineffective assistance

of counsel in his own representation.  Id.

The trial court summarily rejected each of these claims.  App. tab I.  The court denied on the merits Petitioner's claim that he was not competent to elect to represent himself because the record conclusively demonstrated otherwise.  The court determined that Petitioner's ineffective-assistance claims were conclusional and Petitioner failed to point to allege any facts or evidence in support of his claims.  Finally, the court determined that Petitioner's allegations of trial-court error should have been raised on direct appeal and therefore were not cognizable on review of the Rule 3.850 motion.  Id.  The Fifth District Court of Appeal summarily affirmed without opinion.  Id. tab P.

Petitioner then filed the instant Petition, Doc. 1, which Respondent concedes is timely.  Petitioner asserts eight claims for relief: (1) the trial court erred in finding him competent to represent himself; (2) the jury verdict form did not allow the jury to find him not guilty by reason of insanity; (3) the trial court erred in denying his motion to suppress his confession, which he alleges was not voluntary; (4) the trial court erred in failing to grant a mistrial based on a victim's testimony that a law enforcement officer had tampered with her statement; (5) "newly discovered evidence" shows that he was suffering from ketoacidosis at the time he elected to represent himself; (6) counsel's "unprofessional errors and misadvice" misled him about the plea offer and had he understood the facts he would have taken the plea offer; (7) the State made a verbal commitment to keep an eight-year plea offer open

until trial, and the trial court should have enforced that commitment; (8) prosecutorial misconduct because victims' testimony and statements were "coerced."  Doc. 1.

## Exhaustion of Remedies

Respondent contends that Petitioner presented all of his claims in some fashion to the state court, except for claim  (8) pertaining to prosecutorial misconduct.  Doc. 7.  Respondent contends that Petitioner's claim (6), ineffective assistance of counsel, is facially insufficient and conclusional.  Id.  Respondent further contends that Petitioner's claims (2) and (7)   should have been raised on direct appeal but were not, and therefore are now procedurally defaulted.  Id.

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner."[3]  This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."[4]

---

[3] Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).

[4] Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)).

A petitioner's <u>pro se</u> status does not alone amount to good cause.[5]

A review of the record reflects that Petitioner did not present his prosecutorial-misconduct claim in state court, and accordingly the Court agrees that claim (8) is unexhausted.  Further, the trial court rejected claim (2) regarding the jury verdict form because Petitioner failed to raise that ground on direct appeal, and the Court agrees that Petitioner's other claim of trial error in claim (7) should have been presented on direct appeal.  Petitioner's failure to raise these claims in a procedurally correct manner in state court forecloses them from federal habeas review.  To the extent that Petitioner contends that his appellate counsel rendered ineffective assistance for failing to assert such claims on direct appeal, <u>see</u> Doc. 11 (Petitioner's Reply), a review of the record reflects that Petitioner never presented an ineffective-assistance-of-appellate-counsel claim in state court.

As to Petitioner's claim (6) pertaining to the ineffective assistance of trial counsel prior to assuming his own representation, the trial court rejected this claim as insufficient because Petitioner did not allege specific facts in support of his claim that counsel misadvised him or rendered ineffective assistance.  <u>See</u> App. tab I. Petitioner provides no argument as to why the trial court's determination of this claim is erroneous.  <u>See</u> Doc. 1.   Because Petitioner failed to sufficiently present this claim in the state court, the claim is also procedurally defaulted and foreclosed from

_____

[5] <u>See</u> <u>Harmon v. Barton</u>, 894 F.2d 1268, 1275 (11th Cir. 1990).

federal habeas review.  The court further finds that Petitioner's allegations in the instant petition are likewise too vague and conclusional to merit federal habeas review.  Petitioner asserts that his counsel misadvised him about the plea offer and engaged in unprofessional conduct, but he does not explain how he was misled about the plea offer or how counsel's alleged "unprofessional" error had any bearing on his decision to go to trial.

Such procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray v. Carrier, 477 U.S. 478, 496 (1986).  Actual innocence in this context means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no

reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). Further, "a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

Petitioner has not demonstrated cause for the procedural default under either prong. See Doc. 1. Accordingly, the Court agrees that the Petition must be denied on the grounds of exhaustion and procedural default as to Petitioner's claims (2), (6), (7), and (8).

## Merits of Remaining Claims

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.[6]  Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding."[7]  The "contrary to" and "unreasonable application" clauses provide separate bases for review.[8]  A state

---

[6] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[7] See 28 U.S.C. § 2254(d)(1)- (2).

[8] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

court's rejection of a claim on the merits is entitled to deference regardless whether the state court has explained the rationale for its ruling.[9]

## Competency to Represent Himself

In his first and fifth claims, Petitioner contends that the trial court erred in finding him competent to elect to represent himself, and that "newly discovered evidence" shows that he was suffering from ketoacidosis during the state proceedings. Doc. 1 at 6, 14. On postconviction review, the trial court rejected this claim, and Petitioner's argument that ketoacidosis prevented him from making a competent decision, as conclusively refuted by the record. Petitioner contends that the trial court should have required a doctor's report, and Petitioner believed that the prosecutor was his friend. Id.

Before a court permits a criminal defendant to represent himself, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his decision is made with his eyes open." Faretta v. California, 422 U.S. 806, 835 (1975).

A review of the record, as summarized above, reflects that the trial court thoroughly and carefully questioned Petitioner as to his desire to represent himself, and apprised Petitioner in great detail as to the risks of self-representation. At

---

[9] Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002) cert. denied, 538 U.S. 906 (2003); see also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004).

subsequent court appearances, the trial court reaffirmed that Petitioner wished to represent himself, noting on each occasion that Petitioner was alert, intelligent, and competent to make that decision. The record is devoid of any factual support for Petitioner's claim that he suffered any physical malady that impeded his decisionmaking ability at the time the trial court made its repeated inquiries to him. Petitioner points to nothing in the record that undermines the trial court's rejection of this claim on postconviction review, and accordingly Petitioner has failed to show that the trial court's rejection of this claim was contrary to, or an unreasonable application of federal law or an unreasonable determination of the facts.

### Motion to Suppress

Petitioner contends in claim (3) that the trial court erred in denying his motion to suppress his confession because he was under suicide watch at the time he confessed and his statements were taken without benefit of counsel. Doc. 1 at 9.

The Due Process Clause prohibits the government's use of involuntary confessions. Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). "A confession is voluntary if, under the totality of the circumstances, it is the product of the defendant's free and rational choice." Id. (citation omitted). "This means that the confession must not be extracted by any sort of threats or violence, or obtained by any direct or implied promises, or by the exertion of any improper influence." Id. The ultimate issue of voluntariness is a legal question requiring independent determination by the federal court. Id. at 761-62.

Petitioner points to nothing in the record that supports his assertion that his self-incriminating statements were involuntary. This Court's review of the transcript of the suppression hearing supports a conclusion that Petitioner's statements to law enforcement officers were made freely and willingly following a valid waiver of his Miranda rights. See App. tab B (suppression hearing transcript). The law enforcement officers who interviewed Petitioner after he turned himself in to the FBI in Clearwater and implicated himself, testified that Petitioner was lucid, willing, and cooperative in describing the robberies, and that no threats or coercion were applied in obtaining Petitioner's statements. See id. Thus, although the trial court did not make explicit factual findings in denying Petitioner's motion to suppress, the totality of the circumstances as reflected in the hearing on Petitioner's motion to suppress supports a determination that Petitioner's confession was solely the product of his "free and rational choice." Harris, 874 F.2d at 761. Petitioner has not shown that the trial court's denial of his motion to suppress his confession was contrary to, or an unreasonable application of, federal law.

## Motion for Mistrial

Petitioner contends in claim (4) that the trial court erred in failing to grant a mistrial on his claim of "witness tampering" regarding Ms. Gonzalez's testimony. Doc. 1 at 11. Petitioner fails to allege how the trial court's ruling deprived him of any constitutional right. Further, this claim lacks any factual support in the record. As noted above, Ms. Gonzalez affirmed on redirect examination that the contents of her

statement to police were true and accurate. App. tab A. at 352. Moreover, her trial testimony provides ample support for a conclusion that she was placed in great fear during the robbery, in the course of which Petitioner acted "scary," used profanity, and was verbally abusive. Id. at 341-46. Petitioner has made no showing that the state court's rejection of this claim was an unreasonable determination of the facts in light of Ms. Gonzalez's testimony.

## Conclusion

For the foregoing reasons, the Petition is **DENIED** with prejudice. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 1st day of September 2009.

_____
UNITED STATES DISTRICT JUDGE

c:  Mark Anthony King
    Counsel of Record